UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

In Re: Steven Carl Lewis and )
Kimberly Lynne Lewis, )
 )
    Debtors. )
_____ ) Case No.: 10-10117
Linda S. Parks, Trustee ) Chapter 7
 )
    Plaintiff, )
 )
vs. ) Adv. No.:
 )
Consumer Law Associates, LLC and )
David Herron, )
 )
    Defendants. )
_____ )

**COMPLAINT FOR RECOVERY OF MONEY**

1. On January 20, 2010, Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

2. Linda Parks was duly appointed trustee of Debtors' Chapter 7 bankruptcy estate.

3. This court has jurisdiction over this complaint pursuant to 28 USC §157 and §1334, as this is a proceeding which arises in the Chapter 7 proceedings of the Debtors. Venue is properly in this court pursuant to 28 USC §1409.

4. This is a core proceeding.

**Defendants and jurisdiction**

5. Defendant Consumer Law Associates LLC (hereinafter, "CLA") is a Maryland corporation registered to do business in Kansas. CLA can be served by service on its registered agent, The Corporation Company, Inc., 515 S. Kansas, Topeka, KS

66603. CLA entered into a contract with Debtor, a Kansas resident, in Kansas. Further, CLA or its agents solicited Debtor, a Kansas resident, in Kansas to enter into a contract with it and to pay funds to it.

6. Defendant David Erron is an attorney licensed in Kansas. He can be served by mail at his business address at 8527 Blue Jacket St., Lenexa, KS 66214. According to CLA, Defendant Herron provided legal services to Debtors in Kansas. Alternatively, Erron and CLA were actual or apparent agents of one another and Erron ratified CLA's conduct.

**Debtor's financial condition in December 2008**

7. In December 2008, Debtors were insolvent. Their credit card debt totaled over $150,000.

**Debtors hires a "national law firm dedicated to consumer debt resolution", which has fiduciary duties toward them**

8. In an effort to avoid bankruptcy, Debtors hired CLA. CLA's stationery identified as its Kansas counsel David Herron. During the events described in this complaint, Defendants acted independently and as actual or apparent agents for one another. Also, Defendants ratified one another's conduct.

9. Though a reasonable attorney would have advised a Debtor with over $150,000 in credit card debt to file for bankruptcy and/or not to engage in debt settlement, Defendants either explicitly or implicitly advised him to hire CLA to assist them in "debt settlement" as an alternative to bankruptcy. It claimed "our representation can be a very effective way to resolve your debt."

10. CLA provided Debtors with a Client Retainer package that referred to a $199 "one

time consultation fee," a "retainer fee," and a "trust account."  It also charged Debtors a monthly "service fee."  In its disclosures, CLA state that "The [Retainer] fees paid to CLA are intended to compensate us for our efforts and will only be refundable to the extent they have not been deemed to have been earned in the manner described in the Client Retainer Agreement.  Those fees are NOT being set aside or held in escrow to fund debt settlements and will not be available to pay creditors."  When Debtors cancelled their contract, they were told that the firm charged a $150 "file closing fee."

11. The Rules of Professional Responsibility of the Kansas Supreme Court at Rule 1.15 provide that any funds paid by the client that have not been earned must be kept in a separate account maintained in the state of Kansas.  CLA did not keep funds paid but not earned in a separate trust account maintained in the state of Kansas.  It appears they did not keep unearned funds in any separate account.

12. The Client Retainer Package referred to Debtors as "client" of CLA.  It disclosed that CLA was "a law firm which assists consumers with a method of debt resolution known as debt settlement."  It claimed that "CLA determines a consumer's eligibility or suitability for this type of debt resolution effort and may make recommendations regarding the consumer's unique credit and debt situation to determine the best debt relief option for the consumer..."  It stated that "Consumer Law Associates will provide you with legal advice.."

13. By entering into a debt settlement contract with Debtors, CLA explicitly or implicitly represented that competent attorneys had determined that debt settlement was a recommended approach for dealing with Debtors six figure credit

card debt. This was not competent legal advice. By identifying David Herron as the Kansas attorney for CLA, CLA and David Herron either explicitly or implicitly represented that a competent lawyer familiar with Kansas law had determined that debt settlement was an appropriate way for Debtors to deal with their debt.

14. This court held in July 2009 that CLA's fees for filing a bankruptcy petition were not reasonable and that it likely had engaged in the unauthorized practice of law. Despite the strong language the court directed to CLA, it continued to charge unreasonable fees in Kansas several months after the court's opinion in In Re Wood.

15. CLA sent Debtors a letter on January 14, 2010–more than six months after this court's decision in *In Re Wood*. In that letter, CLA stated that Debtors had cancelled their contract and the law firm had "represented" Debtors "in resolving [their] unsecured debt problems." It claimed that the $4849.48 in fees were "considered earned when paid into the program." This representation was inconsistent with its disclosure that stated that fees would be refundable to the extent they had not been earned. If fees were earned when paid into the program, there would never be a time that fees would be refundable. CLA's January 2010 correspondence claimed that CLA had "earned fees totaling $4849.48 to date." It charged Debtors a $150 "file closing fee." Nowhere in CLA's correspondence does it characterize its fees as anything except attorneys fees.

**The law firm's recommendations breach its fiduciary duty to Debtor**

16. As attorney for the Debtors, Defendants had a fiduciary duty to put Debtors' interests ahead of its own and not to engage in any activity that was detrimental to Debtors. CLA's advice to Debtors to engage in "debt settlement" was unreasonable and was given to benefit Defendants at the Debtors' expense. Through this incompetent and self-interested advice, Defendants knew or should have known that they would charge Debtors fees that resulted in little to no benefit to Debtors. Defendants breached their fiduciary duty owed to their clients by advising Debtor to engage in "debt settlement" and to pay fees to Defendants when that was not in Debtor's best interest. Defendants' motivation for this advice was to earn fees.

**The law firm retains fees after cancellation**

17. Initially, Debtors cancelled their contract on January 4, 2010. On January 14, 2010, CLA retained $4849.48 as fees and $150 as a closing fee and refunded only $265.52 that it claimed had been held in trust for Debtor. That was an unreasonable fee. Also, the check to debtors was not in a Kansas bank account and was not designated as being a trust account.

18. In April 2010, the Trustee wrote a letter to CLA asking for an accounting and suggesting CLA would be liable for breach of fiduciary duty, violation of KCPA and other violations of Kansas law. CLA then sent a check to the bankruptcy trustee for $3176.38 that was labeled "refund" and described in an accompanying letter as "proportionate refund of retainer," a designation that would indicate a refund of unearned attorneys fees. Though the letter from CLA indicated that the

funds came from an IOLTA account, the account was not designated a trust account and was not a Kansas account. Though Trustee is uncertain how much money Debtors paid is still being retained by CLA, it is estimated CLA retained an amount in excess of $1400. This is an unreasonable fee.

**Defendants' advice and their method of collecting fees was legal malpractice**

19. Defendants' advice to Debtor to engage in "debt settlement" was legal malpractice in that it departed from the standard of care that would be used by a competent lawyer advising a client with substantial credit card debt. A competent lawyer would have known that Debtors' bankruptcy was inevitable, that diverting money to Defendants rather than to creditors was detrimental to Debtor's financial condition, and that "debt settlement" and the fees it required did not benefit Debtors.

20. The fees charged by Defendants were unreasonable. Rule 1.3 of the Kansas Supreme Court Rules for Professional Conduct provides that a reasonable fee takes into account the time and labor required, the difficulty of the questions involved, the skill requisite to performing the service, the likelihood, if apparent to the client, that the acceptance of particular employment will preclude other employment by the lawyer, the fee customarily charged in the area, the amount involved and results obtained, the time limitations, the nature and length of the professional relationship with the client, the experience reputation and ability of the lawyers and whether the fee is fixed or contingent. That rule provides that this court can review the fee contract and determine whether the contract is reasonable. This fee was unreasonable in that Debtor did not gain any benefit

from the representation, inconsistent statements were made about when the retainer was earned, it is unclear whether lawyers were involved, nonlawyers were likely engaging in the unauthorized practice of law, and the Debtor received incompetent advice and counsel that was motivated by Defendants'desire to earn fees rather than what was best for Debtors.

21. Debtors believe because of evidence in other cases and because of the low involvement of attorneys in comparison to the fees charged that CLA or its employees likely engaged in the unauthorized practice of law in the state of Kansas. Also, the factors that might justify a non-refundable retainer–securing an attorneys' services so as to prevent the attorney from undertaking other representation–are not present here.

22. Defendants' failure to place unearned fees in a separate trust account is a violation of Rule 1.15 of the Rules of Professional Conduct of the Kansas Supreme Court. Failure to segregate Debtor's funds was a departure from the standard of care for attorneys. Defendants represented in their disclosures that some fees would be collected before they were earned. Defendants had an obligation to place these fees in a separate trust account.

**The law firm is not registered in Kansas as a "debt management services company"**

23. Kansas law requires debt management service companies engaged in debt settlement to be licensed and registered. KSA 50-1118. CLA was not registered or licensed, though the court specifically noted this deficiency in its July 2009 opinion in *In Re Wood*.

24. Kansas law exempts a "person licensed to practice law in this state" from

registration requirements if the person is "acting within the course and scope of such person's practice as an attorney."  Attorney David Herron was added to the CLA's letterhead in an effort to avoid the licensing requirements of KSA 50-1118.  However, Herron either incompetently assisted Debtors for an unreasonable fee as described above or did not assist Debtors in the scope of his practice as an attorney so that the exemption does not apply to him.  The other lawyers in CLA's firm would not be exempt from KSA 50-1118, nor would CLA, a separate corporation.

**Trustee's demand**

25. On or about April 13, 2010 the Trustee made a demand on Defendants for an accounting of funds transferred from Debtor to Defendants.

26. Defendants failed to respond, forcing the Trustee to incur attorneys fees and costs in the filing of this action.

**Count 1–Trustee's § 548 and §542 claim against the Defendants for an accounting and avoidance of fraudulent transfer**

27. Debtors transferred at least $4800 and possibly more to Defendants in the two years before his bankruptcy.  Pursuant to 11 USC §542, the Trustee is entitled to an accounting of property transferred from Debtors to Defendants.

28. Debtors did not receive a reasonably equivalent value in exchange for the transfer and Debtors were insolvent at that time and the transfer was made or became insolvent because of the transfer; and/or Debtors intended to incur or believed that they would incur debts beyond the Debtors' ability to pay; and/or Debtors were engaged in a transaction for which the property remaining with the Debtors was

unreasonable small capital.

29. Alternatively, the transfer was made with actual intent to hinder, delay or defraud the Debtors' existing creditors.

30. The transfer is avoidable under 11 USC §548 and recoverable for the benefit of the estate under 11 USC §550.

31. The Trustee has incurred fees, costs and expenses in prosecuting this action. The Trustee is entitled to prejudgment interest from the date of Debtors' demand, which was January of 2010.

WHEREFORE, the Trustee prays that the court enter an order requiring Defendants to provide an accounting of all funds transferred by Debtor to Defendants or either of them, for an order requiring Defendants to turn over any funds transferred by Debtor to Defendants, for costs and attorneys fees and prejudgment and post judgment interest and for all other such relief as the court deems just and equitable.

**Count 2–Trustee's claim for recovery of preferential payments**

32. Debtors declared bankruptcy on January 20, 2010. Debtors made payments to CLA on account of an antecedent debt owed by Debtors to CLA while Debtors were insolvent and within 90 days of filing for bankruptcy protection.

33. Pursuant to 11 USC §547 and §550, the Trustee is entitled to an accounting of all payments made to Defendants and the recovery of all payments made either to Defendants or made by Defendants to creditors of Debtors on Debtors' behalf.

WHEREFORE, the Trustee prays for an order requiring Defendants to provide an accounting of all funds received from Debtors within 90 days of declaring bankruptcy or funds paid by Defendants to any of Debtors other creditors within 90 days of Debtors' declaring bankruptcy

and for and for turnover of any funds paid to Defendants within 90 days of Debtors' declaring bankruptcy and for interest, attorneys fees, costs, and other such relief as the court deems just and equitable.

**Count 3–Trustee's claim against Defendants CLA and Erron for violation of Kansas Consumer Protection Act**

34. Defendants are not authorized to engage in debt management services in the state of Kansas as required by KSA 50-1118.

35. The services for which Debtors contracted with Defendants were a "consumer transaction," Defendants were "suppliers" as that term is used in the Kansas Consumer Protection Act and Debtors were "consumers" as that term is used in the Kansas Consumer Protection Act.

36. Defendants or their agents solicited Debtors to engage in a consumer transaction.

37. Each unlicensed transaction engaged in by Defendants without a license constitutes a deceptive act in violation of the Kansas Consumer Protection Act, KSA 50-623 et. seq., which provides for a $10,000 civil penalty plus attorneys fees and costs. This is particularly appropriate when this court has already pointed out that CLA failed to register its "debt management services."

38. Defendants entered into a contract with Debtors without disclosing that they had been told by the court to register as a "debt management service" and had refused to do so. These nondisclosures were deceptive and unconscionable acts and practices and were prohibited by the KCPA.

39. Though Defendants represented that they were a law firm and they had a Kansas lawyer, much if not all of the "advice" given to Debtor was by nonlawyers. This

was not disclosed to Debtor. The purpose of representing to Debtor that lawyers were involved was to convince Debtor to engage in a consumer transaction in which he assumed risks which materially exceeded the benefit to him. These were deceptive and unconscionable acts that were prohibited by the KCPA.

40. As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover damages, fees or penalties caused by Defendants' pre-petition deceptive and unconscionable acts toward Debtor.

WHEREFORE, Trustee prays for judgment against Defendants for the greater of Debtors' damages or penalties for violation of the KCPA, for costs, for attorneys fees, and for other such relief the court deems just and equitable.

**Count 3–Trustee's claim for legal malpractice and breach of fiduciary duty against Defendants**

41. Defendants represented that they were attorneys and fiduciaries to Debtors.

42. Despite their fiduciary obligations to Debtor, they recommended a course of action to him that was of benefit to them and to the detriment of Debtors.

43. In addition, Defendants committed legal malpractice. A reasonably competent lawyer would not have:

- recommended debt settlement to the insolvent Debtors
- charged unreasonable fees to an insolvent Debtors
- failed to segregate Debtors funds in a trust account
- allowed the unauthorized practice of law
- misrepresented to Debtor that he was receiving legal advice
- failed to disclose to Debtors the risks of participating in debt

settlement

- failed to disclose to Debtors that entering into the contract they entered into with Defendants was unlikely to keep them out of bankruptcy
- initially represented that they had earned a fee of $4849.48, and then refunding over $3500 for the "proportionate refund of fees"
- provided misleading and inadequate information to Debtors about what were appropriate legal fees and when those fees were earned

44. The actions of CLA were ratified by David Herron. David Herron and CLA were actual or apparent agents of one another and are jointly and severally liable for one another's actions.

45. The Debtor incurred actual damages and damages for emotional distress because of Defendants' legal malpractice and breach of fiduciary duty. In addition to actual damages, Debtor is entitled to punitive damages as well.

46. As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover Debtor's prepetition damages for the benefit of his bankruptcy estate.

WHEREFORE, the Trustee prays for judgment against Defendants individually and jointly and severally for actual and punitive damages, for attorneys fees, for costs and for other such relief as the court deems just and equitable.

**Count 4–Trustee's claim for disgorgement of an unreasonable attorneys' fee**

47. Pursuant to the Rules of Professional Conduct of the Kansas Supreme Court, this court can review an attorney fee contract and determine whether the fee is reasonable and, if it is not, can order the payment of a reasonable fee.

48. Fees charged by Defendants were unreasonable because, among other things, the Debtor did not obtain any benefit from the representation, there was no independent legal advice rendered to Debtor, it is likely most services were performed by nonlawyers, a fee was charged for monitoring client funds, which is an obligation imposed on a lawyer by Rule 1.15, the attorneys misrepresented their role and likely performed no services, the attorneys misrepresented whether fees paid were a retainer and were segregated in a trust account, there is insufficient reason to charge a nonrefundable retainer in this case.

WHEREFORE, the Trustee prays for an order of the court requiring Defendants to disgorge the fees they have retained, along with prejudgment interest, for costs and attorneys fees and other such relief the court deems just and equitable.

s/ Gaye B. Tibbets
Gaye B. Tibbets, 13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys for*