**SO ORDERED.**

**SIGNED this 29 day of September, 2010.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN CARL LEWIS, | ) | Case No. 10-10117 |
| KIMBERLY LYNNE LEWIS, | ) | Chapter 7 |
| | ) | |
|    Debtors. | ) | |
| _____ | ) | |
| LINDA S. PARKS, TRUSTEE, | ) | |
| | ) | |
|    Plaintiff, | ) | |
|  vs. | ) | Adversary No. 10-5098 |
| | ) | |
| CONSUMER LAW ASSOCIATES, LLC. | ) | |
| and DAVID HERRON, | ) | |
| | ) | |
|    Defendants. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE
## <u>AND FOR TRANSFER TO THE DISTRICT COURT</u>

-1-

The Court has carefully reviewed the defendants' motion to withdraw the reference of this adversary proceeding from the bankruptcy court for "cause"[1] and makes the following recommendation to the United States District Court for the District of Kansas.[2]

Factual Background

Defendants Consumer Law Associates, L.L.C. ("CLA") and David Herron ("Herron") each provided pre-petition services to the debtors in this case, Stephen and Kimberley Lewis. CLA and Herron contracted with the debtors in 2008 to provide them with "consumer debt resolution" services. When their efforts to resolve their debt outside bankruptcy failed, debtors cancelled their contract with CLA and Herron and retained the legal services of Wichita attorney Sheila Maksimowicz who filed this bankruptcy case for debtors on January 20, 2010. On Schedule F, debtors listed some $210,000 in unsecured, non-priority debt, of which over $170,000 comprised credit card debt.[3]

The Trustee filed this adversary proceeding on May 4, 2010. Styling her adversary complaint as a "Complaint for Recovery of Money," she seeks to avoid and recover fees in excess of $4,800 charged and collected by CLA and Herron from debtors in connection with the consumer debt resolution services as fraudulent transfers, preferences, and as disgorgement of professional fees. The Trustee also alleges that defendants committed deceptive and unconscionable acts that

_____

[1] Adv. Dkt. 13, 16.

[2] *See* D. Kan. Rule 83.8.6(a)(6); 28 U.S.C. § 1334(c) and § 157(d); Fed. R. Bankr. P. 5011. D. Kan. Rule 83.8.6(f) provides that upon filing a motion to withdraw the reference and for transfer, the Bankruptcy Court will submit a written recommendation to the District Court as to whether the reference should be withdrawn.

[3] Debtors identified credit card debt for years 1998, 1999, 2000, 2001, 2005, 2006, 2007, 2008 and 2009. For the remainder of the unsecured debt, debtors listed student loan debt of approximately $33,000 and medical debt of about $3,500.

Case 10-05098    Doc# 33    Filed 09/29/10    Page 2 of 24

are violations of the Kansas Consumer Protection Act (KCPA).[4] Finally, the Trustee alleges that the defendants committed professional malpractice and have breached their fiduciary duties to the debtors. A copy of the Trustee's complaint is attached for the convenience of the District Court.

Defendants timely demanded a jury trial on the Trustee's claims and have withheld their consent to the Bankruptcy Court conducting that trial.[5] Defendants assert that the Trustee's non-core claims predominate her complaint and that their right to a jury trial on those claims is "cause" to withdraw the reference and to transfer this adversary proceeding to the District Court. As is this Court's custom, it has directed the parties to proceed in discovery pending the outcome of this motion.

<u>Analysis</u>

28 U.S.C. §157(d) governs both permissive and mandatory withdrawal of the reference to bankruptcy court and provides:

> The district court *may* withdraw, *in whole or in part*, any case or proceeding referred under this section, on its own motion *or on timely motion* of any party, *for cause shown*. The district court *shall,* on timely motion of a party, so *withdraw a proceeding* if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. [Emphasis added.].

CLA and Herron seek permissive withdrawal for cause.[6] The statute further addresses instances where the right to a jury trial is implicated in the referred proceedings:

---

[4] KAN. STAT. ANN. § 50-623, *et seq.* (2005 and 2009 Supp.).

[5] Adv. Dkt. 11, 12.

[6] The statute does not define what constitutes "cause" for permissive withdrawal of the reference. *See also,* D. Kan. Rule 83.8.6(a)(6).

Case 10-05098    Doc# 33    Filed 09/29/10    Page 3 of 24

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court *and with the express consent of all the parties.*[7]

Here, CLA and Herron have made demand for a jury trial on the Trustee's claims and have withheld their consent for the bankruptcy court to conduct a jury trial. In addition, Tenth Circuit precedent holds that this bankruptcy court has no authority to conduct a jury trial.[8] The case law recognizes that a right to a jury trial may constitute cause for withdrawal of the reference.[9] Accordingly, this Court must consider the reach of its jurisdiction by first determining whether the Trustee's claims are "core" or "non-core," and then determining whether defendants are entitled to a trial by jury on those claims.

Core proceedings are those that have no existence outside of bankruptcy.[10] 28 U.S.C. § 157(b)(1) provides that bankruptcy judges may hear all core proceedings arising under title 11 or arising in a title 11 case. Among the proceedings that are core and enumerated in § 157(b)(2) are: turnover proceedings,[11] proceedings to avoid and recover preferences,[12] proceedings to avoid and

---

[7] 28 U.S.C. §157(e) (Emphasis supplied.).

[8] *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380 (10th Cir. 1990).

[9] *See e.g., In re American Comm. Servs., Inc.,* 86 B.R. 681, 686 (D. Utah 1988); *In re Hassan*, 376 B.R. 1 (Bankr. D. Kan. 2007); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Co.)*, 4 F.3d 1095, 1101 (4th Cir. 1993).

[10] *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990).

[11] § 157(b)(2)(E).

[12] § 157(b)(2)(F).

-4-

recover fraudulent conveyances,[13] and other proceedings "affecting the liquidation of the estate" except for personal injury tort or wrongful death claims.[14]  A bankruptcy court may also exercise "related to" jurisdiction over non-core claims.[15]   "Related proceedings" are civil proceedings that, in the absence of a bankruptcy filing, could have been brought in federal or state court.[16]  So-called "related-to" jurisdiction may be exercised if the outcome of the civil proceeding could conceivably have any effect on the estate being administered in bankruptcy.[17]

At present, it appears to the Court that the complaint is a mixture of core and non-core claims.   The Trustee's claim to avoid and recover alleged preferential payments under 11 U.S.C. § 547 is clearly core, as is her claim to avoid and recover alleged fraudulent transfers (transfers for which debtors did not receive reasonably equivalent value) under 11 U.S.C. § 548.  To the extent the Trustee seeks an accounting and asserts a claim for turnover under 11 U.S.C. § 542, it is core. The balance of the Trustee's claims (KCPA violations, legal malpractice, breach of fiduciary duty, and disgorgement of unreasonable fees) might conceivably be deemed "other proceedings" under the catch-all provision of 28 U.S.C. § 157(b)(2)(O) but are more likely to be non-core claims that do not depend on bankruptcy laws for their existence and could be brought in another forum.[18]  Even

_____

[13]  § 157(b)(2)(H).

[14]  § 175(b)(2)(O).

[15]  28 U.S.C. § 1334(b).

[16]  *Gardner, supra* at 1518.

[17]  *Id.*

[18]  *See In re Glannon,* 245 B.R. 882, 887 n. 3 (D. Kan. 2000) (discussing claims seeking damages against attorneys in bankruptcy court as core proceedings); *In re McCabe,* 302 B.R. 873 (Bankr. N.D. Iowa 2003) (proceedings concerning property of the estate are core proceedings if they affect the liquidation of assets of the estate).

-5-

if this Court concludes that the balance of the claims are non-core, this Court may exercise related-to jurisdiction over them if their outcome may have an effect on the administration of debtors' bankruptcy estate.[19] The claims of the Trustee here are based upon facts that pre-date the filing of the bankruptcy case and involve dealings between the debtors and CLA and Herron. As such, the claims are property of the estate under 11 U.S.C. § 541.[20] Arguably, a recovery of fees and damages from defendants could increase the value of the estate to be administered by the Trustee and affect distribution to unsecured creditors.[21] Even if this Court were to conclude that the remaining claims noted above are non-core and that it *could* exercise related to jurisdiction over them, the Court must consider whether it is precluded from doing so because of the defendants' jury trial demand.[22]

---

[19] *See In re Midgard Corp.,* 204 B.R. 764, 771 (10th Cir. BAP 1997) (Related proceedings include causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 and have an effect on the bankruptcy estate.).

[20] *See Richardson v. United Parcel Service*, 195 B.R. 737, 739 (E.D. Mo. 1996) (Causes of action belonging to the debtor, including employment discrimination claims, become property of the estate upon filing bankruptcy); *In re Parker*, 499 F.3d 616, 624 (6th Cir. 2007) (As legal and equitable interests, causes of action that belong to the debtor constitute property of the estate under § 541(a)(1)); *In re Senior Cottages of America, LLC,* 482 F.3d 997, (8th Cir. 2007) (Legal malpractice and breach of fiduciary duty causes of action that belonged to debtor at the time of filing bankruptcy were property of the estate that could be asserted by chapter 7 trustee.); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9 (1983) (estate property includes causes of action); *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir. 1996) (discussing standing of trustee to assert cause of action as successor to debtor's interest included as property of the estate).

[21] *See Artra Group, Inc. v. Salomon Brothers Holding Group, Inc. (In re Emerald Acquisition Corp.),* 170 B.R. 632, 640 (Bankr. N.D. Ill. 1994) (A proceeding relates to bankruptcy if it affects the amount of property available for distribution or allocation of property among creditors); *Richardson, supra* at 740 (Debtor's employment discrimination case was related to bankruptcy as it could conceivably have an effect on the estate being administered in the bankruptcy.).

[22] It should also be noted that if the Trustee's claims are related proceedings, this Court may not issue a final order on those non-core claims but may only submit proposed findings of fact and conclusions of law to the District Court. *See* 28 U.S.C. § 157(c)(1).

-6-

To analyze the impact of the request for a jury trial on this Court's jurisdiction, the Court must first determine whether CLA and Herron are entitled to a jury trial on the Trustee's claims. Whether defendants are entitled to jury trial on the Trustee's claims is determined by the legal or equitable nature of similar claims at the time the Seventh Amendment was ratified.[23] If the claims pled by the Trustee would have been legal claims at ratification, CLA and Herron will have made a case for withdrawal of the reference. The Court therefore examines the causes of action pled by the Trustee to determine whether they are legal or equitable in nature. If the nature of the relief sought by the Trustee is the recovery of money, the cause of action is ordinarily characterized as legal, rather than equitable.[24]

With respect to the Trustee's fraudulent transfer claim under § 548 of the Bankruptcy Code, the Supreme Court has held that defendants have a right to a jury trial if the defendants have not subjected themselves to the equitable jurisdiction of the bankruptcy court by filing a claim in the bankruptcy case, even though the claim is core.[25] A similar conclusion must obtain with respect to the Trustee's preference claim under § 547.[26] The accounting and turnover claim are more equitable

---

[23] *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41-42, 109 S.Ct. 2782, 106 L.Ed. 2d 26 (1989).

[24] *Id.* at 42, noting that the remedy sought "is more important than [comparing the statutory action to 18th-century actions brought in the courts of England.]"

[25] *Granfinanciera, supra* at 36 (an action for return of a "determinate sum of money"). *See also, In re Huey,* 23 B.R. 804 (9th Cir. BAP 1982) (Defendant entitled to a jury trial where trustee seeks to avoid a fraudulent transfer of money under § 548).

[26] *See Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94, 53 S.Ct. 50, 77 L.Ed. 185 (1932) (suit to recover preferential payments was an action at law); *Granfinanciera, supra; Langenkamp v. Culp,* 498 U.S. 42, 44-45, 111 S. Ct. 330, 112 L.Ed. 2d 343 (1990).

-7-

in nature for which no right to a jury trial exists.[27]  Even if the right of the Trustee to seek a

disgorgement from the debtor's lawyer is somehow jury trial fare, this court's § 542 power to

enforce the turnover of estate property is likely not.[28]  The Court next considers the state common

law and statutory causes of action.  The cause of action alleged for breach of fiduciary duty is a legal

claim for which there is a right to a jury trial.[29]  Likewise, the common law malpractice claim is

clearly an action at law and CLA and Herron are entitled to a jury trial.[30]  The nature of the Trustee's

statutory cause of action under the KCPA is mixed, depending upon whether the claim is based upon

alleged deceptive acts or unconscionable acts.[31]  As to the Trustee's claim of unconscionability,

KAN. STAT. ANN. § 50-627(b) expressly makes the question of whether a defendant has acted

---

[27]  With respect to the accounting claim, once an accounting of debtors transactions with CLA and Herron is made, the Trustee seeks a turnover of the funds paid by debtors to CLA and Herron.  An accounting and turnover is a statutory cause of action under 11 U.S.C. § 542(a).  *See Karnes Enterprises, Inc. v. Quan,* 221 Kan. 596, 603, 561 P.2d 825 (1977) (action seeking an accounting of restaurant's gross receipts was grounded on equitable rights and trial by jury properly denied)*; Braunstein v. McCabe,* 571 F.3d 108 (1st Cir. 2009) (no Seventh Amendment right to jury trial in statutory cause of action brought by chapter 7 trustee to compel turnover of insurance proceeds); *Senchal v. Carroll,* 394 F.2d 797 (10th Cir. 1968), *cert. denied,* 393 U.S. 979 (1968) (In a case decided prior to *Granfinanciera, supra,* trial court did not err in denying request for jury trial on bankruptcy trustee's action to set aside transfers of money and property made by debtor, including an accounting, and require that such property be revested in the bankruptcy estate.).

[28]  *See In re Wood,* 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908) (no right to jury trial exists in actions for disgorgement of excessive fees by counsel)

[29]  *Carnes v. Meadowbrook Executive Bldg. Corp.,* 17 Kan. App. 2d 292, 297, 836 P.2d 1212 (1992).

[30]  *See In re Hassan,* 376 B.R. 1, 18 (Bankr. D. Kan. 2007); *In re SPI Communications & Marketing, Inc.,* 112 B.R. 507, 511-12 (Bankr. N.D.N.Y. 1990).

[31]  While the Trustee focuses on the unconscionability claim under KAN. STAT. ANN. § 50-627 in her brief, the complaint pleads both deceptive *and* unconscionable acts by defendants.  *See* Adv. Dkt. 1, p. 10-11, ¶s 38-40.  An aggrieved consumer may recover damages or a civil penalty. *See* KAN. STAT. ANN. § 50-634 and § 50-636 (2005).

-8-

unconscionably a question of law by providing that "[t]he unconscionability of an act or practice is a question for the court."[32] But whether defendants committed a *deceptive* act in violation of KAN. STAT. ANN. § 50-626(b) is a question for the jury.[33]

In summary then, the Trustee has asserted both legal and equitable claims against CLA and Herron. Defendants are entitled to a jury trial on the following causes of action: the § 548 fraudulent transfer, the § 547 preference, breach of fiduciary duty, malpractice, and the KCPA claim for commission of a deceptive act. CLA and Herron are not entitled to a jury trial on the accounting and turnover claim, the disgorgement claim, or the unconscionability claim under the KCPA. The Court cannot conclude that core proceedings predominate this adversary proceeding and that determination does not in any event control this Court's recommendation regarding withdrawal of the reference. It can conclude that for each of the claims pled by Trustee, she seeks the return or recovery of money or damages and in the instance of five of those pled theories, defendants are entitled to a trial by jury which this Court cannot conduct. At the same time, the Trustee is entitled to but one recovery. If she were to prevail on any of her equitable claims, it is conceivable that a jury trial on the remaining claims may be unnecessary. In addition, the Court already has some familiarity with the debt resolution practices and procedures utilized by CLA and its attorneys. This Court has previously adopted the parties' report of planning meeting for the scheduling deadlines and the

---

[32] In judging a claim of unconscionability under the KCPA, the court determines both the facts and the ultimate legal conclusion. *See State ex rel. Kline v. Berry*, 35 Kan.App.2d 896, 906-07, 137 P.3d 500 (2006).

[33] *Queen v. Lynch Jewelers, LLC,* 30 Kan. App. 2d 1026, 1038, 55 P.3d 914 (2002), *rev. denied* 275 Kan. 965 (2002), citing *Manley v. Wichita Business College,* 237 Kan. 427, 701 P.2d 893 (1985).

parties are presently engaged in discovery.[34]  These causes of action appear to be the only potential asset in debtors' bankruptcy case and is the only matter that stands in the way of the Trustee completing her administration of the bankruptcy case.  Finally, the outcome of dispositive motions may eliminate  some of the Trustee's claims and thereby streamline the case by the time it is ready to be submitted for a jury trial.

Accordingly, this Court recommends that the District Court *defer* withdrawal of the reference for cause of the claims triable to a jury until discovery is completed and the dispositive motions, if any, are decided.  This Court stands ready and willing to preside over discovery and all other pretrial activity on all of the Trustee's claims, through the consideration and determination of any dispositive motions the parties may file.   The Court recommends that it proceed to hear the claims on which defendants are not entitled to a jury trial and that as to these claims, the defendants' motion to withdraw the reference for cause be denied.  Upon completion of pretrial proceedings on the jury claims, the Court recommends that the reference be withdrawn and those jury claims that survive dispositive motions be transferred to the District Court for jury trial.

Finally, each party makes much of the fact that this judge has heard and disposed of a motion to examine attorney transactions under 11 U.S.C. § 329(b) in a prior case involving CLA.[35]  No appeal of that decision was taken by CLA.  Out of an abundance of caution and transparency, the Court provides the case citation for the District Court's consideration.  The broad implication is that CLA cannot receive a fair trial from this judge on the issues presented here.  CLA's remedy for that concern is a motion to recuse, not withdrawal of the reference.

---

[34]  Adv. Dkt. 28 and 29.

[35]  *See In re Wood,* 408 B.R. 841 (Bankr. D. Kan. 2009).

Respectfully submitted this 28th day of September, 2010.

# # #

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

In Re: Steven Carl Lewis and )
Kimberly Lynne Lewis, )
                               )
       Debtors. )
_____ )   Case No.: 10-10117
Linda S. Parks, Trustee )    Chapter 7
                               )
       Plaintiff, )
                               )
vs. )    Adv. No.:
                               )
Consumer Law Associates, LLC and )
David Herron, )
                               )
       Defendants. )
_____ )

## COMPLAINT FOR RECOVERY OF MONEY

1.     On January 20, 2010, Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

2.     Linda Parks was duly appointed trustee of Debtors' Chapter 7 bankruptcy estate.

3.     This court has jurisdiction over this complaint pursuant to 28 USC §157 and §1334, as this is a proceeding which arises in the Chapter 7 proceedings of the Debtors. Venue is properly in this court pursuant to 28 USC §1409.

4.     This is a core proceeding.

**Defendants and jurisdiction**

5.     Defendant Consumer Law Associates LLC (hereinafter, "CLA") is a Maryland corporation registered to do business in Kansas. CLA can be served by service on its registered agent, The Corporation Company, Inc., 515 S. Kansas, Topeka, KS

66603. CLA entered into a contract with Debtor, a Kansas resident, in Kansas. Further, CLA or its agents solicited Debtor, a Kansas resident, in Kansas to enter into a contract with it and to pay funds to it.

6.     Defendant David Erron is an attorney licensed in Kansas. He can be served by mail at his business address at 8527 Blue Jacket St., Lenexa, KS 66214. According to CLA, Defendant Herron provided legal services to Debtors in Kansas. Alternatively, Erron and CLA were actual or apparent agents of one another and Erron ratified CLA's conduct.

**Debtor's financial condition in December 2008**

7.     In December 2008, Debtors were insolvent. Their credit card debt totaled over $150,000.

**Debtors hires a "national law firm dedicated to consumer debt resolution", which has fiduciary duties toward them**

8.     In an effort to avoid bankruptcy, Debtors hired CLA. CLA's stationery identified as its Kansas counsel David Herron. During the events described in this complaint, Defendants acted independently and as actual or apparent agents for one another. Also, Defendants ratified one another's conduct.

9.     Though a reasonable attorney would have advised a Debtor with over $150,000 in credit card debt to file for bankruptcy and/or not to engage in debt settlement, Defendants either explicitly or implicitly advised him to hire CLA to assist them in "debt settlement" as an alternative to bankruptcy. It claimed "our representation can be a very effective way to resolve your debt."

10.    CLA provided Debtors with a Client Retainer package that referred to a $199 "one

time consultation fee," a "retainer fee," and a "trust account." It also charged Debtors a monthly "service fee." In its disclosures, CLA state that "The [Retainer] fees paid to CLA are intended to compensate us for our efforts and will only be refundable to the extent they have not been deemed to have been earned in the manner described in the Client Retainer Agreement. Those fees are NOT being set aside or held in escrow to fund debt settlements and will not be available to pay creditors." When Debtors cancelled their contract, they were told that the firm charged a $150 "file closing fee."

11.     The Rules of Professional Responsibility of the Kansas Supreme Court at Rule 1.15 provide that any funds paid by the client that have not been earned must be kept in a separate account maintained in the state of Kansas. CLA did not keep funds paid but not earned in a separate trust account maintained in the state of Kansas. It appears they did not keep unearned funds in any separate account.

12.     The Client Retainer Package referred to Debtors as "client" of CLA. It disclosed that CLA was "a law firm which assists consumers with a method of debt resolution known as debt settlement." It claimed that "CLA determines a consumer's eligibility or suitability for this type of debt resolution effort and may make recommendations regarding the consumer's unique credit and debt situation to determine the best debt relief option for the consumer..." It stated that "Consumer Law Associates will provide you with legal advice.."

13.     By entering into a debt settlement contract with Debtors, CLA explicitly or implicitly represented that competent attorneys had determined that debt settlement was a recommended approach for dealing with Debtors six figure credit

card debt.  This was not competent legal advice.  By identifying David Herron as the Kansas attorney for CLA, CLA and David Herron either explicitly or implicitly represented that a competent lawyer familiar with Kansas law had determined that debt settlement was an appropriate way for Debtors to deal with their debt.

14.    This court held in July 2009 that CLA's fees for filing a bankruptcy petition were not reasonable and that it likely had engaged in the unauthorized practice of law. Despite the strong language the court directed to CLA, it continued to charge unreasonable fees in Kansas several months after the court's opinion in In Re Wood.

15.    CLA sent Debtors a letter on January 14, 2010–more than six months after this court's decision in *In Re Wood*.  In that letter, CLA stated that Debtors had cancelled their contract and the law firm  had "represented" Debtors "in resolving [their] unsecured debt problems." It claimed that the $4849.48 in fees were "considered earned when paid into the program." This representation was inconsistent with its disclosure that stated that fees would be refundable to the extent they had not been earned.  If fees were earned when paid into the program, there would never be a time that fees would be refundable.  CLA's January 2010 correspondence claimed that CLA had "earned fees totaling $4849.48 to date."  It charged Debtors a $150 "file closing fee."  Nowhere in CLA's correspondence does it characterize its fees as anything except attorneys fees.

**The law firm's recommendations breach its fiduciary duty to Debtor**

16.     As attorney for the Debtors, Defendants had a fiduciary duty to put Debtors' interests ahead of its own and not to engage in any activity that was detrimental to Debtors. CLA's advice to Debtors to engage in "debt settlement" was unreasonable and was given to benefit Defendants at the Debtors' expense. Through this incompetent and self-interested advice, Defendants knew or should have known that they would charge Debtors fees that resulted in little to no benefit to Debtors. Defendants breached their fiduciary duty owed to their clients by advising Debtor to engage in "debt settlement" and to pay fees to Defendants when that was not in Debtor's best interest. Defendants' motivation for this advice was to earn fees.

**The law firm retains fees after cancellation**

17.     Initially, Debtors cancelled their contract on January 4, 2010. On January 14, 2010, CLA retained $4849.48 as fees and $150 as a closing fee and refunded only $265.52 that it claimed had been held in trust for Debtor. That was an unreasonable fee. Also, the check to debtors was not in a Kansas bank account and was not designated as being a trust account.

18.     In April 2010, the Trustee wrote a letter to CLA asking for an accounting and suggesting CLA would be liable for breach of fiduciary duty, violation of KCPA and other violations of Kansas law. CLA then sent a check to the bankruptcy trustee for $3176.38 that was labeled "refund" and described in an accompanying letter as "proportionate refund of retainer," a designation that would indicate a refund of unearned attorneys fees. Though the letter from CLA indicated that the

funds came from an IOLTA account, the account was not designated a trust

account and was not a Kansas account. Though Trustee is uncertain how much

money Debtors paid is still being retained by CLA, it is estimated CLA retained

an amount in excess of $1400. This is an unreasonable fee.

**Defendants' advice and their method of collecting fees was legal malpractice**

19.     Defendants' advice to Debtor to engage in "debt settlement" was legal malpractice

in that it departed from the standard of care that would be used by a competent

lawyer advising a client with substantial credit card debt. A competent lawyer

would have known that Debtors' bankruptcy was inevitable, that diverting money

to Defendants rather than to creditors was detrimental to Debtor's financial

condition, and that "debt settlement" and the fees it required did not benefit

Debtors.

20.     The fees charged by Defendants were unreasonable. Rule 1.3 of the Kansas

Supreme Court Rules for Professional Conduct provides that a reasonable fee

takes into account the time and labor required, the difficulty of the questions

involved, the skill requisite to performing the service, the likelihood, if apparent

to the client, that the acceptance of particular employment will preclude other

employment by the lawyer, the fee customarily charged in the area, the amount

involved and results obtained, the time limitations, the nature and length of the

professional relationship with the client, the experience reputation and ability of

the lawyers and whether the fee is fixed or contingent. That rule provides that this

court can review the fee contract and determine whether the contract is

reasonable. This fee was unreasonable in that Debtor did not gain any benefit

from the representation, inconsistent statements were made about when the retainer was earned, it is unclear whether lawyers were involved, nonlawyers were likely engaging in the unauthorized practice of law, and the Debtor received incompetent advice and counsel that was motivated by Defendants' desire to earn fees rather than what was best for Debtors.

21.     Debtors believe because of evidence in other cases and because of the low involvement of attorneys in comparison to the fees charged that CLA or its employees likely engaged in the unauthorized practice of law in the state of Kansas.  Also, the factors that might justify a non-refundable retainer–securing an attorneys' services so as to prevent the attorney from undertaking other representation–are not present here.

22.     Defendants' failure to place unearned fees in a separate trust account is a violation of Rule 1.15 of the Rules of Professional Conduct of the Kansas Supreme Court. Failure to segregate Debtor's funds was a departure from the standard of care for attorneys.  Defendants represented in their disclosures that some fees would be collected before they were earned. Defendants had an obligation to place these fees in a separate trust account.

**The law firm is not registered in Kansas as a "debt management services company"**

23.     Kansas law requires debt management service companies engaged in debt settlement to be licensed and registered. KSA 50-1118.  CLA was not registered or licensed, though the court specifically noted this deficiency in its July 2009 opinion in *In Re Wood*.

24.     Kansas law exempts a "person licensed to practice law in this state" from

registration requirements if the person is "acting within the course and scope of such person's practice as an attorney." Attorney David Herron was added to the CLA's letterhead in an effort to avoid the licensing requirements of KSA 50-1118. However, Herron either incompetently assisted Debtors for an unreasonable fee as described above or did not assist Debtors in the scope of his practice as an attorney so that the exemption does not apply to him. The other lawyers in CLA's firm would not be exempt from KSA 50-1118, nor would CLA, a separate corporation.

**Trustee's demand**

25.     On or about April 13, 2010 the Trustee made a demand on Defendants for an accounting of funds transferred from Debtor to Defendants.

26.     Defendants failed to respond, forcing the Trustee to incur attorneys fees and costs in the filing of this action.

**Count 1–Trustee's § 548 and §542 claim against the Defendants for an accounting and avoidance of fraudulent transfer**

27.     Debtors transferred at least $4800 and possibly more to Defendants in the two years before his bankruptcy. Pursuant to 11 USC §542, the Trustee is entitled to an accounting of property transferred from Debtors to Defendants.

28.     Debtors did not receive a reasonably equivalent value in exchange for the transfer and Debtors were insolvent at that time and the transfer was made or became insolvent because of the transfer; and/or Debtors intended to incur or believed that they would incur debts beyond the Debtors' ability to pay; and/or Debtors were engaged in a transaction for which the property remaining with the Debtors was

unreasonable small capital.

29. Alternatively, the transfer was made with actual intent to hinder, delay or defraud the Debtors' existing creditors.

30. The transfer is avoidable under 11 USC §548 and recoverable for the benefit of the estate under 11 USC §550.

31. The Trustee has incurred fees, costs and expenses in prosecuting this action. The Trustee is entitled to prejudgment interest from the date of Debtors' demand, which was January of 2010.

WHEREFORE, the Trustee prays that the court enter an order requiring Defendants to provide an accounting of all funds transferred by Debtor to Defendants or either of them, for an order requiring Defendants to turn over any funds transferred by Debtor to Defendants, for costs and attorneys fees and prejudgment and post judgment interest and for all other such relief as the court deems just and equitable.

**Count 2–Trustee's claim for recovery of preferential payments**

32. Debtors declared bankruptcy on January 20, 2010. Debtors made payments to CLA on account of an antecedent debt owed by Debtors to CLA while Debtors were insolvent and within 90 days of filing for bankruptcy protection.

33. Pursuant to 11 USC §547 and §550, the Trustee is entitled to an accounting of all payments made to Defendants and the recovery of all payments made either to Defendants or made by Defendants to creditors of Debtors on Debtors' behalf.

WHEREFORE, the Trustee prays for an order requiring Defendants to provide an accounting of all funds received from Debtors within 90 days of declaring bankruptcy or funds paid by Defendants to any of Debtors other creditors within 90 days of Debtors' declaring bankruptcy

and for and for turnover of any funds paid to Defendants within 90 days of Debtors' declaring bankruptcy and for interest, attorneys fees, costs, and other such relief as the court deems just and equitable.

**Count 3–Trustee's claim against Defendants CLA and Erron for violation of Kansas Consumer Protection Act**

34.     Defendants are not authorized to engage in debt management services in the state of Kansas as required by KSA 50-1118.

35.     The services for which Debtors contracted with Defendants were a "consumer transaction," Defendants were "suppliers" as that term is used in the Kansas Consumer Protection Act and Debtors were "consumers" as that term is used in the Kansas Consumer Protection Act.

36.     Defendants or their agents solicited Debtors to engage in a consumer transaction.

37.     Each unlicensed transaction engaged in by Defendants without a license constitutes a deceptive act in  violation of the Kansas Consumer Protection Act, KSA 50-623 et. seq., which provides for a $10,000 civil penalty plus attorneys fees and costs.  This is particularly appropriate when this court has already pointed out that CLA failed to register its "debt management services."

38.     Defendants entered into a contract with Debtors without disclosing that they had been told by the court to register as a "debt management service" and had refused to do so.  These nondisclosures were deceptive and unconscionable acts and practices and were prohibited by the KCPA.

39.     Though Defendants represented that they were a law firm and they had a Kansas lawyer, much if not all of the "advice" given to Debtor was by nonlawyers. This

was not disclosed to Debtor.  The purpose of representing to Debtor that lawyers were involved was to convince Debtor to engage in a consumer transaction in which he assumed risks which materially exceeded the benefit to him. These were deceptive and unconscionable acts that were prohibited by the KCPA.

40.     As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover damages, fees or penalties caused by Defendants' pre-petition deceptive and unconscionable acts toward Debtor.

WHEREFORE, Trustee prays for judgment against Defendants for the greater of Debtors' damages or penalties for violation of the KCPA, for costs, for attorneys fees, and for other such relief the court deems just and equitable.

## Count 3–Trustee's claim for legal malpractice and breach of fiduciary duty against Defendants

41.     Defendants represented that they were attorneys and fiduciaries to Debtors.

42.     Despite their fiduciary obligations to Debtor, they recommended a course of action to him that was of benefit to them and to the detriment of Debtors.

43.     In addition, Defendants committed legal malpractice.   A reasonably competent lawyer would not have:

- recommended debt settlement to the insolvent Debtors

- charged unreasonable fees to an insolvent Debtors

- failed to segregate Debtors funds in a trust account

- allowed the unauthorized practice of law

- misrepresented to Debtor that he was receiving legal advice

- failed to disclose to Debtors the risks of participating in debt

settlement

- failed to disclose to Debtors that entering into the contract they entered into with Defendants was unlikely to keep them out of bankruptcy

- initially represented that they had earned a fee of $4849.48, and then refunding over $3500 for the "proportionate refund of fees"

- provided misleading and inadequate information to Debtors about what were appropriate legal fees and when those fees were earned

44.   The actions of CLA were ratified by David Herron.  David Herron and CLA were actual or apparent agents of one another and are jointly and severally liable for one another's actions.

45.   The Debtor incurred actual damages and damages for emotional distress because of Defendants' legal malpractice and breach of fiduciary duty.  In addition to actual damages, Debtor is entitled to punitive damages as well.

46.   As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover Debtor's prepetition damages for the benefit of his bankruptcy estate.

WHEREFORE, the Trustee prays for judgment against Defendants individually and jointly and severally for actual and punitive damages, for attorneys fees, for costs and for other such relief as the court deems just and equitable.

**Count 4–Trustee's claim for disgorgement of an unreasonable attorneys' fee**

47.   Pursuant to the Rules of Professional Conduct of the Kansas Supreme Court, this court can review an attorney fee contract and determine whether the fee is reasonable and, if it is not, can order the payment of a reasonable fee.

48.     Fees charged by Defendants were unreasonable because, among other things, the

Debtor did not obtain any benefit from the representation, there was no

independent legal advice rendered to Debtor, it is likely most services were

performed by nonlawyers, a fee was charged for monitoring client funds, which is

an obligation imposed on a lawyer by Rule 1.15, the attorneys misrepresented

their role and likely performed no services, the attorneys misrepresented whether

fees paid were a retainer and were segregated in a trust account, there is

insufficient reason to charge a nonrefundable retainer in this case.

WHEREFORE, the Trustee prays for an order of the court requiring Defendants to

disgorge the fees they have retained, along with prejudgment interest, for costs and attorneys fees

and other such relief the court deems just and equitable.


s/ Gaye B. Tibbets
Gaye B. Tibbets, 13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys for*