

**SO ORDERED.**

**SIGNED this 29th day of March, 2012.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN CARL LEWIS, | ) | Case No. 10-10117 |
| KIMBERLY LYNNE LEWIS, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| LINDA S. PARKS, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 10-5098 |
| | ) | |
| CONSUMER LAW ASSOCIATES, LLC., | ) | |
| DAVID HERRON, and EFA PROCESSING, LP, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER RECOMMENDING WITHDRAWAL OF THE REFERENCE

Defendants renew their motion to withdraw the reference of all claims in this proceeding

1

arguing that because this Court lacks life tenure and salary protection, Article III of the Constitution requires that the District Court decide all of the claims asserted here.[1] After careful review of the Supreme Court's recent decision in *Stern* and its long-standing precedent in *Marathon*, I agree that absent the parties' consent to this Court's determination of the claims made by the trustee, this Court is likely unable to enter final judgment and that trial on all of the claims, whether core and whether jury-eligible or not, should be conducted in the District Court.

*Background*

Steven and Kimberly Lewis filed their chapter 7 bankruptcy case on January 20, 2010. Their chapter 7 trustee, Linda S. Parks, sued Maryland law firm Consumer Law Associates, and Kansas attorney David Herron, for a number of claims arising from pre-petition consumer debt resolution services provided to the Lewises. As set forth in the final pretrial order just filed, those claims have been narrowed to the following: violation of the Kansas Consumer Protection Act (KCPA), KAN. STAT. ANN. § 50-623 *et seq* (2005 and 2010 Supp.), violation of the Kansas Credit Services Organization Act (KCSOA), KAN. STAT. ANN. § 50-1116 *et seq* (2005), legal malpractice, breach of fiduciary duty, disgorgement of fees, and avoidance of fraudulent transfers under 11 U.S.C. § 548.[2] When the defendants answered the complaint, they timely demanded a jury trial on all claims and filed an initial motion to withdraw the reference for cause and transfer to the District Court under 28 U.S.C. § 157(d). That motion was filed in June of 2010.[3]

---

[1] Dkt. 182; *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011), *reh'g denied* 132 S.Ct. 56, 180 L.Ed. 2d 924 (Aug. 15, 2011).

[2] Dkt. 193. The trustee later joined EFA Processing as a party defendant and asserted similar claims against it. The trustee has abandoned some of the initial claims pled, namely, avoidance of a preferential transfer under 11 U.S.C. § 547 and for an accounting and turnover.

[3] Dkt. 13. *See also,* D. Kan. Rule 83.8.6.

2

On September 29, 2010, I issued a Report and Recommendation to the District Court, recommending that the District Court defer withdrawing its reference of the jury-eligible claims in this proceeding pending the completion of the pretrial process and my deciding any dispositive motions that might be filed.[4] I also recommended that the District Court deny the motion to withdraw the reference of the turnover and accounting, disgorgement, and KCPA unconscionability claims, claims on which I concluded the defendants were not entitled to a jury trial. I suggested that if any of these non-jury claims survived summary judgment, they could be tried in the Bankruptcy Court. The District Court accepted that recommendation.[5]

Discovery proceeded and I issued several scheduling orders, the most current of which was issued on April 27, 2011.[6] Under that order, as subsequently amended, dispositive motions were due not later than December 24, 2011.[7] None has been filed. The pretrial order was due on September 15, 2011, but the parties could not agree to its form, requiring me to settle the order at a conference conducted on October 26, 2011. Even after that, some controversy as to the content of the order remained and I convened a further pretrial order conference on March 21, 2012 at which time I directed that a final pretrial order consistent with my comments and directions of October 26, 2011 and March 21, 2012 be uploaded forthwith.[8] The parties have not requested an extension of the

---

[4] Dkt. 32.

[5] Dkt. 58, Text Order.

[6] Dkt. 114.

[7] Dkt. 177, 183.

[8] That Order was entered on March 27, 2012, dkt. 193.

dispositive motion deadline in this proceeding.[9]

The three claims that I proposed be "retained" by the bankruptcy court were the trustee's accounting and turnover claim, her KCPA unconscionable acts claim, and her claim for disgorgement of fees. The trustee has now abandoned the accounting and turnover claim. In October of 2011, after the Supreme Court issued its opinion in *Stern v. Marshall*, the Defendants renewed their motion to withdraw the reference of the "retained" claims, arguing that the Bankruptcy Court lacks the constitutional authority to hear, determine, and enter final judgment on these essentially state law claims.[10] The defendants also argue that they should not be subjected to two separate trials, one here, and one in District Court. The trustee objected and I took this motion under advisement in December. Recently, the defendants have filed supplemental authority on the jurisdictional scope of *Stern*.[11] After my review of that authority, I conclude that while this case differs from *Stern* in many ways, these three retained claims involve the adjudication of "private rights" and are not intrinsic to the bankruptcy process. As I cannot enter final judgment upon them, they should be tried to the Article III tribunal.

*Analysis*

When Congress enacted the Bankruptcy Act of 1978, it created the bankruptcy courts as

---

[9] A similar adversary proceeding, *Parks v. Persels & Associates, LLC et al (In re Kinderknecht)*, Adv. No. 10-5209 (Bankr. D. Kan.) is pending before me and I am preparing to issue an order on the pending summary judgment motion in that matter. Many of the issues raised in this proceeding are in play in *Kinderknecht* and counsel have suggested in hearings that they had delayed filing dispositive motions here until I issued an order in that matter.

[10] Dkt. 182.

[11] Dkt. 189.

Case 10-05098    Doc# 194    Filed 03/29/12    Page 4 of 8

adjuncts of the district courts.[12] Bankruptcy judges were appointed by the President and confirmed by the Senate, but only served for terms of 14 years. The Act created a broad scheme of bankruptcy jurisdiction that empowered our courts to hear and determine civil cases that had any kind of relationship to a bankruptcy case, including state law contract actions by debtors against parties not otherwise a part of the bankruptcy proceedings.[13] In 1982, in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, the Supreme Court struck down this broad jurisdictional grant as an unconstitutional delegation of the Article III powers.[14] A plurality of the Court concluded that such claims couldn't be assigned to bankruptcy judges without violating Article III because those judges lack tenure and salary guaranties. The *Marathon* court concluded that state law contract actions were not matters of "public right" that can constitutionally be assigned to "legislative" courts.[15] Nor were bankruptcy judges who exercised such broad jurisdiction mere "adjuncts" of the district courts.[16]

Congress responded in 1984 by enacting amendments that changed how bankruptcy judges were appointed and limited their ability to enter final judgments by confining that power to "core" proceedings that are inclusively defined in 28 U.S.C. § 157(b)(2).[17] Rather than being "adjuncts" of

---

[12] *See* former 28 U.S.C. § 151(a) (1978).

[13] See former 28 U.S.C. § 1471 (1978) (Granting "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.").

[14] 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed. 2d 598 (1982).

[15] *Marathon,* 458 U.S. at 83-84. *See Murray's Lessee v. Hoboken Land & Imp. Co*, 59 U.S. 272, 284, 18 How. 272, 15 L.Ed. 372 (1855).

[16] *Marathon,* 458 U.S. at 87.

[17] Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984).

5

the district courts, our courts became "units" of them.[18] Among the categories of core proceedings are counterclaims by the estate against entities filing claims against the estate.[19] Bankruptcy judges may hear and determine non-core proceedings, but only upon the parties' consent. If the parties do not consent, the bankruptcy court may still hear the case, but must submit proposed findings of fact and conclusions of law to the district court for *de novo* review of any finding or conclusion to which the parties may object.[20]

Enter the *Stern* case in 2011. There, after Vicki Lynn Marshall's husband, billionaire J. Howard Marshall, died, Vicki sued his son Pierce in Texas state court for tortious interference with a gift.[21] In the course of that action, her lawyers made statements that Pierce deemed defamatory. When Vicki filed bankruptcy, Pierce filed a claim in the case for damages arising out of the alleged defamation. In turn, Vicki filed a counterclaim for the same tortious interference remedy she was pursuing in Texas state court. The bankruptcy court conducted a trial and awarded Vicki some $400 million in damages. After a series of appeals, the matter returned to the Supreme Court. The court held that while Vicki's counterclaim to Pierce's bankruptcy claim was a core proceeding under 28 U.S.C. § 157(b)(2)(C), that section unconstitutionally delegates the power to hear a state law counterclaim that is not a "public right" to a "legislative" court. Because the bankruptcy judge decided issues in Vicki's defamation case that were not intrinsic to allowing or disallowing Pierce's claim, it "exercised the 'judicial Power of the United States' in purporting to resolve and enter final

---

[18] 28 U.S.C. § 151.

[19] 28 U.S.C. § 157(b)(2)(C).

[20] 28 U.S.C. § 157(c)(1) and (2); Fed. R. Bankr. P. 9033(a) and (d); D. Kan. Rule 83.8.8.

[21] Ms. Marshall was better known by her stage-name, Anna Nicole Smith.

Case 10-05098    Doc# 194    Filed 03/29/12    Page 6 of 8

judgment on a state common law claim, just as the bankruptcy court did in *Northern Pipeline*."[22] Because Vicki's claim was not a matter of public right, the bankruptcy court could not decide it. The majority commented that § 157(b)(2)(C), "in one isolated aspect" exceeded the Article III limitations. The judgment was reversed.

The defendants here argue that the KCPA unconscionability and disgorgement claims asserted by Parks are, like Vicki's counterclaim in *Stern*, matters that lie beyond the public right exception. Those claims involve issues that are not core proceedings. The only impact resolving these causes of action will have on this case is a possible recovery for the estate if Parks prevails and recovers money for the benefit of their creditors. But *Stern* may not really matter here. Unlike Pierce Marshall in *Stern*, none of these defendants has filed a claim in this case and none of them has consented to this Court entering final judgment in this proceeding. Instead, these defendants are more like the defendant in *Marathon*: they are "entit[ies] that [are] not otherwise part of the bankruptcy proceedings" who will, nevertheless, be subjected to the adjudication of state law claims against them, without their consent, by a judge who lacks tenure and salary guarantees.[23] In this circumstance, there is no constitutional authority for the bankruptcy court to enter final judgment on these claims over these defendants' withheld consent.

An additional and somewhat less controversial reason to grant the defendants' renewed motion is that the District Court will hear a variety of other claims in this proceeding, all of which will involve the same set of facts as the KCPA unconscionability and disgorgement claims.

---

[22] *Stern,* 131 S. Ct. at 2611.

[23] *See Stern*, 131 S. Ct. at 2597 (discussing *Marathon* and the Article III jurisdictional challenge to a bankruptcy court's determination of a state-law contract claim).

7

Presumably much of the same conduct that the trustee claims supports her KCPA deceptive acts may also support the unconscionability claim. And determining whether these defendants should disgorge their compensation is likely bound up in whether they are liable for professional negligence or misconduct. Because there is no reason to subject the parties to multiple trials on the same facts, judicial economy requires that all of the claims should be tried to the District Court, even those that will not be submitted to the jury.[24]

Finally, with the entry on March 27 of the final pretrial order in this matter,[25] the bankruptcy court's work in this proceeding is complete. The time to file dispositive motions has passed. The District Court should withdraw the reference of this adversary proceeding in its entirety for all future proceedings. The Bankruptcy Court should retain the reference of the Lewis bankruptcy case for further administration and closing.

Accordingly, I recommend that the defendants' renewed motion to withdraw the reference of this adversary proceeding be GRANTED.

# # #

---

[24] *See* 28 U.S.C. § 157(d) (authorizing the withdrawal of the reference of a proceeding "in whole or in part" for cause shown). As an aside, there is a third set of courts whose power to try *all* these claims to judgment is unquestioned (even though its judges have neither life tenure nor salary protection): the Kansas state courts. In matters like this one, resort to those courts may be a better avenue to recovery than navigating the shoals of *Marathon* and *Stern*.

[25] Dkt. 193.